**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LEMONT LOVE,** | **Civil Action No. 16-2017 (SDW)** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,** | |
| **Defendants.** | |

**WIGENTON**, District Judge:

Currently before the Court is Defendants' motion to dismiss Plaintiff Lemont Love's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 3). Plaintiff has filed a response to the motion. (ECF No. 4). Defendants, however, declined to file a reply brief. For the following reasons, this Court will grant the motion in part, will dismiss all of Plaintiff's § 1983 claims with prejudice, and will remand Plaintiff's remaining state law claims back to the Superior Court of New Jersey.

## I.  BACKGROUND

In his current complaint, Plaintiff, Lemont Love essentially asserts claims challenging several incidents in which he was deprived of either money or property after his transfer to East Jersey State Prison in June 2015. (Document 1 attached to ECF No. 1 at 10). Prior to his transfer, in April of 2015, Plaintiff had received a check for over six thousand dollars following the settlement of an unrelated civil matter. (*Id.*). After those funds were deposited into his accounts, Plaintiff's prior prison applied some fifteen hundred dollars of that money to pay various fines and fees Plaintiff owed to the Courts either as a result of his criminal convictions or as a result of his

filing of various civil actions.  (*Id.*).  Following his transfer to East Jersey, Plaintiff alleges that a further $ 2,000 was deducted from his account to pay fines and fees he owed on a conviction which had previously been vacated and dismissed in August 2012.  (*Id.*).  Thus, although Plaintiff acknowledges that the prisons are required by New Jersey statutes and administrative code sections to deduct funds legally owed by inmates, he contends the taking of this $ 2,000 was improper in this instance because the funds were no longer owed following the vacating of his conviction and the dismissal of the charges which formed the basis of that conviction in 2012.  (*Id.*).

Plaintiff claims that he submitted several complaints regarding this money.  (*Id.*).  In November 2015, Plaintiff alleges he was told by unknown prison officials to provide a copy of the judgement of conviction for the vacated charge to the business office of the prison, which Plaintiff contends he did.  (*Id.* at 10-11).  Plaintiff further states that nothing resulted from this process, and that he therefore filed a notice of tort claim with the state to address the funds, but that his tort claim was "denied."  (*Id.*at 11).  Plaintiff asserts that he appealed this denial, apparently to Defendant Nogan, the administrator of East Jersey State Prison, but that following this appeal, nothing has been done to rectify the withdrawal of his funds.  (*Id.*).

Plaintiff next claims that he was further deprived of property in the fall of 2015 following his joining the prison's art and hobby program.  Plaintiff states that he joined this program in September 2015, and his joining was approved the following month.  (*Id.*).  According to Plaintiff, this program required that "all hobby materials must come from source of sale" but doesn't describe what this rule actually entailed.  (*Id.*).  Plaintiff does state, however, that he was aware of no rule requiring that hobby materials be purchased from a specific approved vendor.  (*Id.*).  Plaintiff further explains that, according to the prison handbook, "the only requirement in receiving hobby materials is that you first must be on the approved hobby list."  (*Id.*).

2

Plaintiff alleges that he thereafter asked a "tier rep" whether he could purchase his hobby materials from Walmart, and was told that he could do so.  (*Id.*).  Plaintiff also explained that glue was among the items which were approved for program members to purchase, and that program materials did not state that there was a size limitation for glue.  (*Id.* at 12).  Plaintiff therefore made a purchase from Walmart totaling $50.00, which included a large bottle of glue.  (*Id.*).  In December of 2015, these purchases were received in the mail room, but Plaintiff received a confiscation sheet instead of his supplies, and was told that his hobby materials were confiscated because the glue exceeded the permitted size and because the items were not purchased from an approved vendor.  (*Id.*).  Plaintiff appealed this decision to Defendant Baker, the mail room supervisor, and Defendant Nogan, based on his argument that there was no list of approved vendors or size restrictions on glue, or at least that he was not given any policy placing those restrictions on hobby program members, and that his materials should therefore be released to him.  (*Id.*). These appeals were denied.  (*Id.* at 12-13).

In discussing the matter with Baker, Plaintiff contends that Baker was "always very courteous and willing to listen, but wouldn't budge on his position."  (*Id.* at 12).  Plaintiff asserts that Baker told him that a prison policy prevents purchase from unauthorized vendors, but that 15-25 percent of inmates in the hobby program ordered materials from Walmart because they were unaware of the policy.  (*Id.*).  Plaintiff also states that Baker said that the normal policy was to reject packages from unapproved vendors such as Walmart, but that in Plaintiff's case the mail room had accepted the package and thus Plaintiff would have to pay to have his package shipped back to the vendor so he could receive a refund.  (*Id.* at 13).  Plaintiff insisted that the prison should ship it back at its own expense, but this request was denied and Plaintiff was told that he could either pay to have it shipped back or have his contraband materials destroyed on March 1, 2016.

(*Id*).  Plaintiff asserts that he appealed this decision to Nogan once again, but met "with no success."  (*Id.*).  Plaintiff states that Nogan denied his appeals as to the confiscation of all of his materials other than the glue, but that he received no response as to his appeal concerning the glue. (*Id.*).  He also states that he was given no explanation for the denial, despite policies stating that prisoners would receive such an explanation.  (*Id.* at 13-14).

Plaintiff's final set of claims arise out of a search of his prison unit by N.J. Department of Corrections Special Operations Group Officers.  (*Id* at 14-15).  According to Plaintiff, these officers were dispatched by the Department to search Plaintiff's unit for contraband.  (*Id.* at 14). The officers did so while Plaintiff was not present.  (*Id.*).  Upon his return, Plaintiff found his hair trimmers and lamp out of place and damaged to the point of being nonfunctional, discovered that several of his possessions (including pens, tweezers, envelopes, stamps, batteries, and a mirror) had been taken, and found that his hair grease had been dumped into his sneakers.  (*Id.* at 14-15). Plaintiff states that none of these items were contraband, and that he was not given a contraband seizure receipt for the items, in contravention of standard prison policy.  (*Id.* at 15).  Plaintiff also states that he submitted a grievance about this occurrence, which was denied, filed an appeal of the grievance, which was also denied, and sought to file a complaint against the officers.  (*Id.* at 15).  Plaintiff was ultimately informed that the SOG Officers were not a part of the prison, and prison administration, including Nogan, could therefore not control their actions.  (*Id.*).  Plaintiff therefore complained to Defendants Lanigan, the commissioner of the Department, and Ford, Lanigan's subordinate, but received only a response from Ford stating that Plaintiff had not filed a grievance about the incident that Ford could find.  (*Id.* at 16).  Plaintiff contends that, despite Ford's statement, he did file such a grievance.  (*Id.*).

Plaintiff therefore filed a civil suit in the Superior Court of New Jersey on or about February 16, 2016.  (ECF No. 1 at 2).  In his complaint, Plaintiff asserts claims for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a claim for illegal search and seizure in violation of the Fourth Amendment pursuant to § 1983, a claim for a violation of Due Process arising out of Nogan's alleged failure to provide him a statement of reasons in responding to his grievances, and state law claims for theft and conversion regarding the seizure of his hobby materials and funds against Baker and Nogan.  (Document 1 attached to ECF No. 1 at 17-18).  As Defendants, Plaintiff names the Department, the prison, and several supervisors including Baker, Nogan, Lanigan, and Ford, as well as several John Does who actually allegedly committed the underlying acts.  (*Id.* at 8-9).   Defendants removed this action to this Court on or about April 12, 2016.  (ECF No. 1). Defendants now move to dismiss Plaintiff's complaint.  (ECF No. 3).

## II.  DISCUSSION

### A.  Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible.

*Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678).

## B.  Analysis

Plaintiff seeks to sue Defendants for violations of his federal constitutional rights pursuant to the federal civil rights statute, 42 U.S.C. § 1983.  Section 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals."  *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013).  To assert a claim under the statute, a plaintiff must allege that he was deprived of a federal constitutional or statutory right by a person who was acting under the color of state law at the time that the alleged deprivation occurred.  *Id.*  When called upon to evaluate a claim under § 1983, a court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).  Here, Plaintiff asserts claims for deprivation of property, illegal search and seizure, violations of due process in the prison's grievance procedures, and state law claims for theft and conversion.  Defendants have now moved to dismiss all of Plaintiff's claims.

## 1.  Both the Department and Prison must be dismissed as they are not proper Defendants

Defendants correctly argue that Plaintiff's § 1983 claims must be dismissed as to both the Department and Prison they are not proper Defendants for such claims.  As this Court has

explained to Plaintiff in another of his cases, "'[n]either states, nor their departments and agencies ... are 'persons' within the meaning of Section 1983.' *Goode v. N.J. Dep't of Corr.*, No. 11–6960, 2015 WL 1924409, at *10 (D.N.J. April 28, 2015). A state department of corrections and the prisons it operates are therefore not 'persons' under the statute and 'cannot be sued under 42 U.S.C. § 1983.' *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir.2012)." *Love v. New Jersey Dep't of Corr.*, No. 15-3681, 2015 WL 4430353, at * 3 (D.N.J. July 20, 2015).  As such, Plaintiff's § 1983 claims against both East Jersey State Prison and the New Jersey Department of Corrections must be dismissed with prejudice at this time.

Defendants also contend that Plaintiff's official capacity claims against Defendants Lanigan, Nogan, Baker, and Ford must be dismissed as a result because an official capacity suit seeking money damages is no different than a suit against the entity which employs him, *see Love*, 2015 WL 4430353 at *4.  In his response to the motion to dismiss, however, Plaintiff explicitly concedes that he does not sue these individuals in their official capacities for money damages (which he instead seeks in his individual capacity claims), but names them in their official capacity only to the extent he seeks injunctive relief.  Because Plaintiff names Defendants in their official capacities only to the extent he seeks injunctive relief, the Court need not dismiss those claims on Eleventh Amendment grounds, and would only be required to dismiss the official capacity claims to the extent they sought damages.  *Id*.  Thus, whether Plaintiff's official capacity claims against Defendants survives depends entirely on whether the merits of those claims survive.

### 2. Plaintiff's Deprivation of Property Claims

The vast majority of Plaintiff's claims concern the deprivation of his property by Defendants.  Before addressing those claims, this Court must note that to the extent that Plaintiff

attempts to raise a Fourth Amendment claim regarding the search of his cell which resulted in the

seizure or destruction of his personal property, that claim arises not out of the Fourth Amendment,

but out of the Due Process Clause as prisoners do not have a legitimate expectation of privacy in

their prison cells, and thus his claim rises and falls as a deprivation of property claim rather than

as a search and seizure claim.  *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 523-30 (1984); *see also*

*Hudson*, 468 U.S. at 538-40 (O'Connor, J., concurring).  Defendants contend that all of Plaintiff's

deprivation of property claims must be dismissed for failure to state a claim.  As this Court has

previously explained to Plaintiff,

> To assert a Due Process claim for the deprivation of one's property
> by a public official, a plaintiff must assert that he possessed a
> property interest, that he was deprived of that interest by a state
> actor, and that he was not provided notice and an opportunity to be
> heard in relation to the taking of his property interest.  *See Rusnak
> v. Williams*, 44 F. App'x 555, 558 (3d Cir. 2002).  "Where a state
> actor deprives an individual of property without authorization,
> [however,] either intentionally or negligently, that deprivation does
> not result in a violation of the Fourteenth Amendment so long as a
> meaningful post deprivation remedy for the loss is available.  *See
> Hudson v. Palmer*, [468 U.S. 517, 530-36] (1984); *Parratt v. Taylor*,
> [451 U.S. 527, 543-44] (1981); *overruled in part on other grounds*,
> *Daniels v. Williams*, [474 U.S. 327] (1986)."  *Love v. New Jersey
> Dep't of Corr.*, Civil Action No. 14-5629, 2015 WL 2226015, at *5
> (D.N.J. May 12, 2015); *see also Miller v. Fraley*, No. 12-4470, 2015
> WL 511296, at *11 (D.N.J. Feb. 6, 2015).  The State of New Jersey
> has provided a proper post-deprivation remedy to plaintiffs for the
> unauthorized deprivation of their property through the New Jersey
> Tort Claims Act.  *See N.J. Stat. Ann.* § 59:1-1, *et seq.*; *Love*, 2015
> WL 2226015 at *5; *Miller*, 2015 WL 511296 at *11.   Thus,
> Plaintiff's claims would only state a cognizable § 1983 claim to the
> extent that he claims that he was deprived of his property pursuant
> to an authorized state procedure, and not as a result of the unlawful
> or unauthorized actions of various prison personnel.  *See Logan v.
> Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982).

*Love v. New Jersey Dep't of Corr.*, No. 15-4404, 2016 WL 2757738, at *8 (D.N.J. May 12, 2016).

8

In this matter, Plaintiff asserts deprivation of property claims relating to three separate incidents – the taking of two thousand dollars to pay fees and fines associated with a vacated conviction, the seizure of his hobby supplies as contraband, and the damaging and seizure of his property from his cell during the SOG search.   As to the last deprivation – the damaging and seizure of his property during the cell search – Plaintiff has specifically alleged that these acts were unlawful and unauthorized under the established procedures of the prison.   As such, Plaintiff is only entitled to post-deprivation process in the form of the New Jersey Tort Claims Act, and his § 1983 claim must therefore be dismissed with prejudice.  *Id.*  As Plaintiff's claims against the John Doe SOG officers and Defendants Ford and Lanigan arise solely out of the SOG incident, and Plaintiff's claim regarding that incident fails to state a claim for relief, Defendants Lanigan, Ford, and the SOG officers must in turn be dismissed from this action with prejudice.

As to Plaintiff's other two claims, the situation is somewhat more complicated as Plaintiff contends that both the hobby material incident and the money incident occurred pursuant to established state procedure.

> While [the Supreme Court's decision] in *Logan*[, 455 U.S. at 435-36,] stands for the proposition that the lack of pre-deprivation process prior to the seizure of a plaintiff's property pursuant to established state policies generally violates due process, that rule is not universal.  *See Reynolds v. Wagner*, 936 F.Supp. 1216, 1228 (E.D.Pa.1996) ("Admittedly, there is no pre-deprivation remedy. Such a remedy, however, is not always necessary every time a loss occurs stemming from an established governmental policy."), *aff'd* 128 F.3d 166 (3d Cir.1997); *Shabazz v. Odum*, 591 F.Supp. 1513, 1517 (M.D.Pa.1984) ("Due process, however, does not require a predeprivation hearing every time a loss occurs as a result of an established governmental procedure."); *see also Dantzler v. Beard*, Civil Action No. 09–275, 2010 WL 1008294, at *8–9 (W.D.Pa. Mar.15, 2010); *Williams v. Healy*, Civil Action No. 08–2389, 2012 WL 2594348, at *16 (D.N.J. July 5, 2012) (citing *Dantzler* with approval).   Even where a deprivation occurs pursuant to an established procedure, such as a prison policy, a post-deprivation remedy can sufficiently comport with due process where

predeprivation process would be impossible or impracticable. *Dantzler*, 2010 WL 1008294, at *9. This is especially true in cases involving the seizure of purported contraband, a situation in which the provision of pre-deprivation process would be impractical at best. *See Monroe v. Beard*, 536 F.3d 198, 209–10 (3d Cir.2008) (requiring only post-deprivation remedy for the seizure of purported contraband even when seizure occurred pursuant to a newly developed policy); *Barr v. Knauer*, 321 F. App'x 101, 103 (3d Cir.2009) (finding no due process violation where a prisoner was deprived of an electric razor, even where such razors had previously been approved for prisoner possession, where an adequate post-deprivation remedy was provided).

*McGill v. Nogan*, No. 14-8133, 2015 WL 4041295, at *4 (D.N.J. July 1, 2015).

Even assuming that Plaintiff is correct in his assertion that the taking of his money and hobby supplies, however incorrect, was undertaken pursuant to established state procedure, Plaintiff's claims still must fail because they fall into the category of claims where pre-deprivation process would essentially be impossible. As to the hobby materials claim, those materials clearly fall within the category of claims dealing with the seizure of contraband where the Third Circuit has held that post-deprivation remedies are sufficient. *Id.*; *see also Monroe*, 536 F.3d at 209–10; *Barr*, 321 F. App'x at 103. While the taking of money from Plaintiff's account was not a contraband seizure, that occurrence, too, falls into the category of claims wherein pre-deprivation remedy would be either impracticable or impossible. This is so because Plaintiff's claim arises out of the deduction of funds from a prisoner's account based on fines and fees imposed as a result of one of his criminal convictions. Although in Plaintiff's case this seizure was allegedly improper as the conviction in question had been overturned, it does not change the fact that such deductions are regularly required of prisons and, given the prevalence of fines and fees as forms of criminal punishment, prisons are required to make many such deductions on a regular and ongoing basis. To require predeprivation process for every instance where money is deducted from a prisoner's account because of a judgment of conviction would prove self-defeating and would likely make

the collection of such fines and fees from prisoners an impossible task.  As such, a pre-deprivation remedy procedure would at the very least be impracticable for this type of monetary seizure, and may well not be possible at all.  Thus, for such situations, the availability of a post-deprivation remedy is sufficient to comport with due process, and the availability of the New Jersey Tort Claims Act renders Plaintiff's claims based on these incidents insufficient to state a claim for relief. *McGill*, 2015 WL 4041295, at *4; *see also Monroe*, 536 F.3d at 209–10; *Barr*, 321 F. App'x at 103; *Dantzler v. Beard*, 2010 WL 1008294, at *8–9.  Thus, all of Plaintiff's deprivation of property claims fail to state a claim for relief as an adequate post-deprivation remedy procedure is available to Plaintiff, and those claims must be dismissed with prejudice for failure to state a claim for relief.

### 3. Plaintiff's remaining Due Process Claim[1]

Plaintiff's final federal claim is that he was denied Due Process when he was not given a statement of reasons for the denial of his appeal of his administrative grievance regarding the hobby material seizure.  Defendants contend that Plaintiff has failed to state a claim for relief as to this claim.  "It is well established that prisoners have no constitutional right to a grievance system or to responses to their grievances," *Roberts v. Aviles*, No. 10-5916, 2012 WL 603790, at *1 n. 4 (D.N.J. Feb. 16, 2012), "and the state creation of such a procedure does not create any federal constitutional rights."  *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state").  Plaintiff therefore does not have a federal constitutional Due Process right

---

[1] Although Plaintiff mentions both the Fifth and Fourteenth Amendment in regards to this claim, as his claim is asserted against State, and not Federal, actors, his claim must arise under the Fourteenth rather than Fifth Amendment.

to receive an explanation as to the denial of his grievance appeal, and his § 1983 claim that he was denied Due Process when he was not given an explanation for that denial thus fails to state a claim for relief as a matter of law, and must be dismissed with prejudice.

**4. Plaintiff's State Law Claims**

Finally, Plaintiff raises two state law claims – a claim asserting that Defendant Nogan is liable to him for the tort of conversion for taking money from his account, and a claim that both Nogan and Baker committed the tort of theft by refusing to give him his money and hobby materials.  Although Defendants argue that this Court should dismiss those claims as well, the Court notes that it has already dismissed all of Plaintiff's federal claims, and as such has dismissed all claims over which it has original jurisdiction.  Where a federal court has dismissed all claims over which it has original jurisdiction, that court may decline to extend supplemental jurisdiction over any remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3).  Likewise, where a district court lacks subject matter jurisdiction over all of the claims presented in a case that has been removed from state court, the court must remand the matter back to state court.  *See* 28 U.S.C. § 1447(c); *City of Pittsburgh Comm'n on Human Relations v. Key Bank USA*, 163 F. App'x 163, 165-66 (3d Cir. 2006).  As the Supreme Court has held, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between . . . parties, by procuring them a surer-footed reading of applicable [state] law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Key Bank USA*, 163 F. App'x at 166.  The Third Circuit has therefore held that, where all federal claims have been dismissed, a federal district court should decline to extend pendent jurisdiction over any remaining state law claims and should instead remand those claims to the state courts absent extraordinary circumstances. *Key Bank USA*, 163 F. App'x at 166 (citing

*Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000); *Shaffer v. Bd. Of Sch. Dirs. Of Albert Galatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir 1984)).  Because this Court perceives no extraordinary circumstances which would merit retaining pendent jurisdiction over Plaintiff's state law claims, and because it appears that it would be in the interests of fairness, judicial economy, and convenience to have the state courts consider Plaintiff's remaining state law claims, this Court will remand Plaintiff's remaining claims back to the Superior Court of New Jersey.  *Id.*

## III. CONCLUSION

For the reasons stated above, this Court will grant the motion in part, will dismiss all of Plaintiff's § 1983 claims with prejudice, and will remand Plaintiff's remaining state law claims back to the Superior Court of New Jersey.  An appropriate order follows.

Dated: September 8, 2016                           *s/ Susan D. Wigenton*
                                                   Hon. Susan D. Wigenton,
                                                   United States District Judge

13